# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 18-00188-CR-W-DGK |
| Donzell A. Jones, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE (Doc. #26) filed on February 14, 2019, by defendant Donzell Jones ("Jones"). On April 16, 2019, the undersigned held an evidentiary hearing on Jones' motion. Jones was present and appeared *pro* se. The government was represented by Assistant United States Attorney Matthew Moeder. At the evidentiary hearing, three witnesses testified – Jones, as well as Officer Warner Stumphaus and Detective Sergeant Mike Buente, both with the Kansas City, Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | Aerial map |
| Gov't. #2 | Dash cam video [Stumphaus] |
| Gov't. #3 | Dash cam video [Lynn] |
| Gov't. #4 | CAD logs |
| Gov't. #5 | Radio dispatch recording |
| Gov't. #6 | Firearm photo |
| Gov't. #7 | KCPD Detective Investigation Report |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

# PROPOSED FINDINGS OF FACT[1]

1. On June 5, 2016, Warner Stumphaus was a patrol officer with the Kansas City, Missouri Police Department working in the Metro Patrol Division and Mike Buente was a detective with the Kansas City, Missouri Police Department assigned to the Assault Squad. Tr. at 4-5, 28, 39-40.

2. At approximately 12:30 p.m., Officer Stumphaus was dispatched to the area of 58th Street and Olive Street in Kansas City after an armed robbery had been reported through the 911 system by a victim of the robbery (Keith Brown). Tr. at 5-6, 28, Gov't #5.

3. The dispatch radio report received by Officer Stumphaus noted that the suspect in the robbery was a black male armed with a gun, wearing red shoes, blue pants, a red, white, and blue shirt, and a gray hat, who was last seen running toward Prospect Avenue. Tr. at 6.

4. During his response to the area, Officer Stumphaus spoke with the robbery victim, Mr. Brown, who pointed to a man walking north on Wabash Street as the perpetrator. Tr. at 13.

5. Officer Stumphaus drew his weapon and approached the individual – later identified as Jones – and noted he that was wearing red shoes, blue shorts, a multi-colored shirt, and a gray hat. Tr. at 13-15, 28.

6. Office Stumphaus ordered Jones to get on the ground. Tr. at 14.

7. Jones was then handcuffed and detained as part of the investigation into the reported armed robbery. Tr. at 14-15.

8. Officer Stumphaus did a pat-down of Jones and found no weapons. Tr. at 32.

9. While Officer Stumphaus was detaining Jones, two other officers arrived at the scene. Tr. at 15.

10. Officer Stumphaus returned to Mr. Brown and learned that following the armed robbery, Mr. Brown had observed Jones briefly walk between two houses on the 5900 block of Olive Street. Tr. at 15-16, 23.

11. Mr. Brown believed that Jones may have discarded the firearm used in the robbery between the two houses. Tr. at 16-17.

---

[1] In making these findings, the Court has been required to make some credibility determinations, particularly as they pertain to Officer Stumphaus' recitation of the facts surrounding the initial encounter with Jones and the subsequent interview with Jones by Detective Buente. In making such determinations, the Court considered (1) the demeanor of the witnesses on the stand, (2) the interest the witnesses had in the outcome of the motion, and (3) the opportunity of the witnesses to hear, observe, and recall what was said or done. The Court concludes that, in general, where there were conflicts, the officers were more credible witnesses.

12. Officer Stumphaus and a K-9 officer then searched the area near 5911 Olive. Tr. at 17.

13. The canine alerted to a pile of leaves in the unfenced back yard on the north side of the house at 5911 Olive. Tr. at 17-18.

14. Officer Stumphaus searched the leaf pile and found a black sock containing a loaded Jiminez Arms 9 mm. handgun with black electrical tape on the grip. Tr. at 18-19.

15. After Jones was arrested, he was interviewed by Detective Buente. Tr. at 40-41.

16. Prior to the interview, Detective Buente apprised Jones of his *Miranda* rights and Jones waived his rights and agreed to be interviewed by Detective Buente. Tr. at 41.

17. In the ensuing interview, Jones denied any involvement in the robbery. Tr. at 41.

18. In the interview, Jones reported his address as 404 Northeast Sharon Drive, Lee's Summit, Missouri. Tr. at 43-44.

19. Jones never resided at 5911 Olive nor has he had any connection to the address. Tr. at 60-61.

## PROPOSED CONCLUSIONS OF LAW

In his *pro se* motion before the Court, Jones seeks the suppression of "all evidence obtained during the illegal exploratory search leading to [Jones'] arrest on June 5, 2016." Jones more specifically alleges that law enforcement officers improperly prolonged his detention after determining that Jones was not armed and improperly expanded the scope of the stop of Jones.

Certainly, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . .." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the
> common law, than the right of every individual to the possession
> and control of his own person, free from all restraint or
> interference of others, unless by clear and unquestionable authority
> of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, of course, the law enforcement officers did not have a warrant to stop or arrest Jones. However, over the years, many exceptions to the warrant requirement have been recognized. Nonetheless, the Supreme Court has cautioned that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)).

In *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S. Ct. at 1884-85. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S. Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is not dispositive for a constitutional analysis; rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S. Ct. 1758, 1763 (1984).

The concept of "reasonable suspicion" is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 2329 (1983). In large part, common sense dictates the analysis of reasonable suspicion.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same and so are law enforcement officers.

*United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). Inherent in the concept of reasonable suspicion is the fact that officers may be mistaken in their beliefs. The keystone in such cases hinges on reasonableness. Under the law, even "a reasonable but mistaken belief may justify an investigative stop." *United States v. Bailey,* 417 F.3d 873, 877 (8th Cir. 2005). *See also United States v. Garcia-Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999).

In this case, based on the totality of the circumstances, the Court finds that Officer Stumphaus had the requisite reasonable suspicion to initially conduct an investigatory stop of Jones. Not only did Jones match the general description of the perpetrator of an armed robbery in the vicinity where he was stopped, he was positively identified as the robber by one of the victims of the crime prior to being detained by Officer Stumphaus. Realistically, Officer Stumphaus had probable cause to arrest Jones – but, at any rate, he certainly had reasonable suspicion to initiate an investigatory stop.

Inasmuch as Officer Stumphaus was entitled to conduct an initial stop of Jones, Officer Stumphaus thereafter could conduct a reasonable investigation into the suspicions that lead to the stop. Jones argues that even if the initial stop was reasonable, the stop became unconstitutional after Officer Stumphaus determined that Jones was not armed. It is true that a constitutionally permissible *Terry* stop can become unlawful, however, "if it is prolonged beyond the time

5

reasonably required to complete its purpose." *United States v. Suitt*, 569 F.3d 867, 870 (8th Cir. 2009). In this case, the Court does not find that Officer Stumphaus improperly prolonged the stop by detaining Jones while the robbery witnesses were further interviewed and a search for the gun was made on the 5900 block of Olive. The information provided by Mr. Brown about Jones' movements and suspicious activities in the moments after the robbery justified any expansion of Officer Stumphaus' investigation (and Jones' attendant detention). *Compare United States v. Hanlon*, 401 F.3d 926, 928-29 (8th Cir. 2005) (when "surrounding objective circumstances give rise to a reasonable suspicion that "criminal activity may be afoot, [an] officer may expand the scope of his investigation"). Under the totality of the circumstances, the Court finds no constitutional infirmity in Officer Stumphaus' detention of Jones.

Moreover, even setting aside a determination regarding the detention, Jones' primary objective with his suppression motion is to prevent the discovered handgun from being used as evidence. In this regard, Jones does not appear to have any solid constitutional footing.

While the Fourth Amendment can – in a proper case – be used to suppress the search and subsequent seizure of incriminating evidence that has been seized without a warrant, a complaining defendant must show that he or she has an adequate basis to raise a constitutional challenge to any search and seizure. Federal courts often refer to this analysis as a question of "standing" – a terminology that the Supreme Court has questioned. *See*, *e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 139-40, 99 S. Ct. 421, 428 (1978). Regardless of the terminology employed, however, the law is well-settled that "Fourth Amendment rights are personal rights that may not be asserted vicariously." *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015). Thus:

> [A] defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search.

*United States v. Mosley*, 878 F.3d 246, 255 (8th Cir. 2017). Thus, whether viewed as "standing" or a definitional issue of substantive law, "[i]n order to show a legitimate expectation of privacy in the searched premises, the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999).

Simply put, with regard to the search in the unfenced back yard on the north side of the house at 5911 Olive and the ensuing seizure of the handgun, Jones has not established that he had any expectation of privacy – objective or subjective – in that property. Accordingly, he cannot claim any Fourth Amendment violation in a search of that property.

Similarly, Jones has not shown any expectation of privacy in the seized handgun itself. Indeed, even if he were to claim that the handgun was his property, the law is well settled that "[w]hen a person voluntarily abandons his interest in property . . . he relinquishes any expectation of privacy and may not challenge a search [or seizure] of that property based on the Fourth Amendment." *United States v. Camberos-Villapuda*, 832 F.3d 948, 951-52 (8th Cir. 2016). Whether a defendant voluntarily abandoned his interests in a particular property is determined based on the totality of the circumstances. *United States v. Caballero-Chavez*, 260 F.3d 863, 866–67 (8th Cir. 2001). However, courts particularly consider whether the defendant denies ownership of the property and whether he physically relinquished the property. *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). Additionally, abandonment is determined based on the objective facts available to the investigating officers at the time they conducted the challenged search – it does not depend on a defendant's knowledge or intent. *United States v. Nowak*, No. 825 F.3d 946, 948-49 (8th Cir. 2016) (*per curiam*).

Under the law and the facts of this case, the Court concludes that – at best (for purposes of Fourth Amendment analysis) – Jones abandoned the firearm such that he may not now challenge the search and seizure of the firearm as violating his Fourth Amendment rights. Such a ruling means the evidence will not be suppressed. To be clear, however, the ruling does not mean that the government is excused from proving at any criminal trial to a factfinder that Jones previously had possession of the firearm.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the Motion to Suppress Illegally Obtained Evidence (Doc. #26) filed on February 14, 2019, by defendant Donzell Jones.

Counsel and defendant Donzell Jones are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                         */s/ John T. Maughmer*
                                         **John T. Maughmer**
                                       **United States Magistrate Judge**